Scott J.
— The general rule is, that where a party receives a note as collateral security for an existing debt, without any special agreement, the party receiving such note must use ordinary care and diligence in collecting it; and if any loss should happen to the other party, by reason of a want of such care and diligence, the law will compel him to make good the loss. Such cases are not governed by the strict rules of commercial law applicable to negotiable paper; but fall under the general law of agency, which must determine the rights and *8 liabilities of the parties. But, where there is a special agreement between the parties, they will be bound by such special agreement, and not by the general rule. Lawrence v. McCalmont, 2 Howard, U. S. R. 426; Lee v. Baldwin, 10 Geo. Rep. 208.
In the case before us, the collaterals were assigned and delivered on the 10th of April, 1856, at the time of executing the note which they were intended to secure, and which was payable two years after its date, but with interest payable annually. The notes assigned were negotiable in character, and, counting days of grace, the first one would mature, April 4, 1857; and the second, one year later; and they were each bearing interest, payable annually.
• Evidence having been offered by the defendants, on the trial, tending to prove the state of facts contemplated by the charge of the court, the jury was instructed that “ if they were satisfied from the evidence, that on cue 80th day of March, 1857, the said Palmer offered to pay to the plaintiff the amount of the note, which by its tenor was payable on or before April 1, 1857, and was then able and willing to pay it, and that he would have paid it had the plaintiff insisted on the payment, and the plaintiff declined or neglected to receive it, though he neglected to receive it at the solicitation of said Palmer; and if they were satisfied from the evidence that Palmer had since become insolvent; and that the mortgage deed was not sufficient security in the sum of $572 for all the notes described in it; then, that the jury should allow a credit to the defendants in this suit, of the said sums of money which the said Palmer offered to pay, and which the plaintiff did not receive.”
Neither the answer of the defendants, nor the evidence in the case, charged the plaintiff with actual fraud, or intentional bad faith. It is nowhere intimated that he had reason to suspect the ultimate insolvency of Palmer ; or that he was aware of the insufficiency of the mortgage security which Palmer had given to the defendants, and which they had transferred to the plaintiff." The charge of the court proceeds on no such supposition. Nor do the instructions given to tne jury, place the liability of the plaintiff on the ground of his duty to receive *9 the amount of the notes held by him as collateral security, upon the legal tender of the same by the maker. The case stated by the court, supposes that Palmer did not in fact desire to make payment, but that having it in his power to make present payment, he expressed his willingness to do so, if insisted on by the plaintiff; and the jury was told, in effect, that though, as against Palmer, the plaintiff had then no legal right to demand payment, the note having still four days to run, yet that it was his duty, under these circumstances to insist upon, and thus obtain payment; and that his failure to do so, constituted such want of proper care and diligence as would render him liable to the extent of the payment which he might have obtained, for the loss occasioned by the subsequent insolvency of Palmer.
Do the instructions thus given, truly present the law of the case ? We think they do not.
It may properly be conceded, that the plaintiff having received the notes in question as collateral security, his duty was not limited to their safe keeping; but that he was bound so to conduct himself, in regard to them, as by no fault of commission or of omission to prejudice the legal rights of his debtors from whom they were received. But, even in the absence of any special agreement, we see no legal right of the defendants, for the protection of which they could reasonably expect or require their assignee to demand and insist upon payment by Palmer, before the expiration of the time given by the express terms of the note. Having agreed with Palmer that he might make payment, according to his own convenience, at any time, not later than the 4th of April, was it the duty of their assignee, and agent, without instructions, not only to demand, but to insist upon an earlier payment ? It is clear that none of their legal rights were waived, or at all affected, by this failure of the plaintiff to require, at Palmer’s hands, more than the performance of his contract.
But the agreement of the parties to the assignment was, in this case, special. The notes assigned were not due, and the defendants, by the terms of their assignment, waived demand and notice of nonpayment.
*10 This assignment was an absolute guaranty of payment, and the plaintiff was thereby relieved from all obligation to demand payment when the note matured; and if so, much more was he under no obligation to demand and insist upon an earlier payment, even by the strict rules of commercial law governing ordinary indorsements.
Judgment of the court of common pleas reversed, and case remanded.
Peck, C.J., and G-holson and Brinkerhoee, JJ., concurred.
Ranney J., dissented.